UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                                                                 :

G & G CLOSED CIRCUIT EVENTS LLC,    :

                                Plaintiff,    :

            -against-    :
                                                      :    **REPORT AND**
JESUS RAMIREZ, *individually and d/b/a*    :    **RECOMMENDATION**
EL TRONO DE MEXICO SPORTS BAR; and    :
EL PEDREGAL RESTAURANT CORP.,    :    21-CV-5007 (LDH)(PK)
*an unknown business entity d/b/a* EL TRONO DE    :
MEXICO SPORTS BAR,    :

                                Defendants.    :

-------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

        G & G Closed Circuit Events LLC ("Plaintiff") brought this action against El Pedregal Restaurant Corp. d/b/a El Trono De Mexico Sports Bar ("El Pedregal") and its owner and principal Jesus Ramirez ("Ramirez" and, together with El Pedregal, "Defendants"). Plaintiff alleges that Defendants violated the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 553 and 605 *et seq.*, by intercepting and broadcasting its closed-circuit telecast of a boxing match without paying the requisite sublicensing fee. (*See* Compl. ¶¶ 1, 19-28, Dkt. 1.)

        Before the undersigned on referral from the Honorable LaShann DeArcy Hall is Plaintiff's motion for default judgment. ("Motion," Dkt. 13.) For the reasons stated below, the undersigned respectfully recommends that the Motion be GRANTED, and that Plaintiff be allowed to move for pre- and post-judgment interest, attorneys' fees, and costs within 30 days after entry of default judgment against Defendants.

## BACKGROUND

**I.   Factual Background**

The following facts are taken from the Complaint (Dkt. 1), the affidavit of Plaintiff's president, Nicolas J. Gagliardi ("Gagliardi Aff.," Dkt. 13-2), Plaintiff's Memorandum in Support of Application for Default Judgment ("Pl. Mem.," Dkt. 13-1), the Closed-Circuit Television License Agreement between Plaintiff and DAZN Limited f/k/a Perform Investment Limited ("DAZN") ("Master Services Agreement," Ex. 1 to Gagliardi Aff., Dkt. 13-2), and the affidavit of Ashley Santangelo ("Santangelo Aff.," Ex. 5 to Declaration of Joseph P. Loughlin, "Loughlin Decl.," Dkt. 13-3).

On May 1, 2019, Plaintiff and DAZN entered into the Master Services Agreement, which granted Plaintiff "the exclusive nationwide commercial distribution (closed-circuit) rights" to sublicense certain DAZN events. (Compl. ¶¶ 19-20; *see* Gagliardi Aff. ¶ 4; Master Services Agreement at 1.)  The agreement covered events named in two attached Statements of Work ("SOW"), as well as in any future SOWs.  (Master Services Agreement at 1).

On October 1, 2019, Plaintiff and DAZN agreed to Statement of Work 4 ("SOW 4") which granted the exclusive right for the broadcast of the November 2, 2019 "WBO Light Heavyweight Championship Fight Program" between Canelo Alvarez and Sergey Kovalev, including any undercard and preliminary bouts (collectively, the "Program"), among other events, throughout New York and other areas.  (Compl. ¶ 19; SOW 4, Ex. A to Compl. at 1; *see* Master Services Agreement at 1.)  Plaintiff, in turn, entered into sublicensing agreements with various commercial entities granting those entities "the rights to publicly exhibit the Program within their respective commercial establishments in exchange for a fee."  (Compl. ¶ 20.)

The Program "originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal."  (*Id.* ¶ 24; *see* Gagliardi Aff. ¶ 11.)  This transmission was "electronically coded or 'scrambled.'"  (Compl. ¶ 24; *see* Gagliardi Aff. ¶ 11.)  A commercial

2

establishment authorized by Plaintiff to broadcast the Program could receive the transmission in one of two ways. The establishment could be "provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal." (Compl. ¶ 25; *see* Gagliardi Aff. ¶ 11.) Alternatively, "the establishment's satellite or cable provider would be notified to unscramble the reception of the Program for the establishment, depending upon the establishment's equipment and provider." (Compl. ¶ 25; *see* Gagliardi Aff. ¶ 11.)

Defendant El Pedregal is a New York corporation which owns and operates the commercial establishment doing business as El Trono De Mexico Sports Bar located at 3819 69th Street, Woodside, NY 11377 (the "Establishment"). (Compl. ¶¶ 7, 9.) Defendant Ramirez is the owner and principal of El Pedregal. (*Id.* ¶ 9.) He is identified as the Principal for El Pedregal on the New York State Liquor Authority License for El Pedregal, and he is also the sole individual identified on the On Premises Liquor License issued to El Pedregal for the Establishment. (*Id.* ¶¶ 10, 11.) Plaintiff alleges that Ramirez "had the right and ability to supervise the activities of El Trono De Mexico Sports Bar, which included the unlawful interception, receipt and publication of Plaintiff's Program." (*Id.* ¶ 12.) It also alleges that Ramirez, as the owner and sole individual identified in the Liquor License, "had an obvious and direct financial interest" in the unlawful interception of the Program and that he "specifically directed the employees of El Trono De Mexico Sports Bar to unlawfully intercept, receive and broadcast Plaintiff's Program." (*Id.* ¶¶ 14, 15, 17.)

Plaintiff submitted an affidavit from Ashley Santangelo, an investigator with Remote Risk Management, stating that on November 2, 2019, at 11:15 p.m., she entered the Establishment and observed one of the Program's undercard bouts, Ryan Garcia vs. Romero Duno, exhibited on five television screens. (Santangelo Aff. at 1-2; *see* Gagliardi Aff. ¶ 7; SOW 4 at 1.) Santangelo paid a cover fee of $10 and ordered one drink. (Santangelo Aff. at 1.) She estimated the capacity of the Establishment to be about 70 people and counted 36, 40, and 42 patrons, in three separate headcounts.

3

(*Id.*)  Plaintiff also submitted photographs of posters outside the Establishment advertising the broadcast of the Canelo vs. Kovalev fight on November 2, 2019 at El Trono De Mexico Sports Bar. (Loughlin Decl. ¶ 16; Dkt. 13-3 at ECF Pages 31-33.)

Defendants did not lawfully license with Plaintiff to broadcast the Program or pay Plaintiff the required commercial sublicense fee.  (Compl. ¶ 28; Gagliardi Aff. ¶ 7; *see also* Rate Card, Dkt. 13-3 at ECF Page 21.)

## II.     Procedural Background

Plaintiff filed the Complaint on September 7, 2021 and served it on El Pedregal and Ramirez on September 14, 2021 and October 2, 2021, respectively.  (Dkts. 1, 6, 7.)  Neither El Pedregal nor Ramirez filed an answer.  Plaintiff requested a certificate of default for both Defendants on November 11, 2021, which was entered by the Clerk of Court on November 16, 2021.  (Dkts. 8, 9.)  The Court held an initial conference on December 14, 2021; Defendants were notified of the conference but did not appear.  (*See* Dkt. 10; Minute Entry dated Dec. 14, 2021.)  Plaintiff filed the Motion on January 10, 2022.  (Dkt. 13.)  The Motion was referred to the undersigned for a Report and Recommendation the following day.  (Order dated Jan. 11, 2022.)

## DISCUSSION

## I.     Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  It provides "a 'two-step process' for the entry of judgment against a party who fails to defend."  *Id.* (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default.  Fed. R. Civ. P. 55(a).  Then, the plaintiff must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

4

Failure to answer may constitute a default, as may failure to defend at later stages of litigation. *See* Fed. R. Civ. P. 55(a). Here, Defendants did not file an answer to the Complaint.

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (collecting cases). A court must draw all reasonable inferences in the moving party's favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27, 133; (2) the plaintiff took all required procedural steps in moving for default judgment, *see* Local Civil Rule 55.2; and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84.

A court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default and the amount of damages are clearly established. *See Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208. The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

II. **Jurisdictional Requirements**

A court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)). Before entering a default judgment, a court may, but need not, inquire as to whether

5

it has personal jurisdiction over a defaulting defendant. *See id.* at 133 (citing *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 & n.7 (2d Cir. 2010)).

The Court has subject matter jurisdiction over Plaintiff's FCA claims pursuant to 28 U.S.C. § 1331. The Court also has personal jurisdiction over Defendants. El Pedregal is a New York corporation "doing business" in New York. (Compl. ¶¶ 7-8.) Ramirez "transacted business" in New York as El Pedregal's owner and operator, and Plaintiff's claims arise from Ramirez's operation of his business. (Compl. ¶¶ 9, 14, 17.) *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing N.Y. C.P.L.R. §§ 301, 302(a)).

### III. Procedural Requirements

The Summons and Complaint must be properly served on a defaulting party. *See Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). Plaintiff served Ramirez on October 2, 2021 by delivering a copy of the Summons and Complaint to "a person of suitable age and discretion" at Ramirez's "usual place of abode" and mailing a copy to Ramirez's "last known residence" (Affidavit of Service, Ex. 4 to Loughlin Decl. at ECF Page 26; *see* Loughlin Decl. ¶ 15). *See* Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2). Plaintiff served El Pedregal by delivering and leaving a copy of the Summons and Complaint with the Secretary of State of New York (Affidavit of Service, Ex. 4 to Loughlin Decl. at ECF Page 27; *see* Loughlin Decl. ¶ 15). *See* Fed. R. Civ. P. 4(h)(1)(B); N.Y. Bus. Corp. L. § 306(b)(1). Thus, service on both Defendants was proper.

As part of the Motion and in compliance with the Local Civil Rules, Plaintiff included a memorandum of law (Dkt. 13-1), *see* Local Civil Rule 7.1(a)(2); a copy of the Clerk's certificate of default (Ex. 1 to Loughlin Decl.), *see* Local Civil Rule 55.2(b)(1); a copy of the Complaint (Ex. 2 to Loughlin Decl.), *see* Local Civil Rule 55.2(b)(2); proof of service of the Complaint (Ex. 4 to Loughlin

Decl.), *see* Local Civil Rule 55.1(b)(3); a proposed judgment (Ex. 3 to Loughlin Decl.), *see* Local Civil Rule 55.2(b)(3); and proof of mailing of the Motion to Defendants (Dkt. 13 at ECF Page 4), *see* Local Civil Rule 55.2(c). Plaintiff included an "Application for Default Judgment by the Court" (Dkt. 13), which satisfies the requirement of a Notice of Motion in that it "specif[ies] the applicable rules or statutes pursuant to which the motion is brought" and "the relief sought by the motion." Local Civil Rule 7.1(a)(1). Both the Affidavit of Service on Defendant Ramirez and the Loughlin Declaration state that Ramirez is not an infant, incompetent person, or person in military service, or otherwise exempted from default judgment (Dkt. 7; Loughlin Decl. ¶ 4). *See* Local Civil Rule 55.1(b)(1).

Accordingly, Plaintiff has complied with the procedural requirements for default judgment.

**IV.    Liability Under the Federal Communications Act of 1934**

In the Complaint, Plaintiff alleged violations of both § 605 and § 553(a) of the FCA. (*See* Compl. ¶¶ 29-37, 38-45.) Plaintiff may recover under either § 605 or § 553, but not both. *See Circuito Cerrado v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011). In the Motion, Plaintiff seeks to recover damages under § 605 only. (*See* Pl. Mem. at 4.) Therefore, this Report and Recommendation discusses only Defendants' liability and Plaintiff's damages under § 605, not § 553.

### A.    *Legal Standard Under Section 605*

Section 605(a) of the FCA states that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the [ ] contents … of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication … for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication … knowing that such communication was intercepted, shall divulge or publish the [ ] contents … of such communication … or use such communication … for his own benefit or for the benefit of another not entitled thereto.

7

47 U.S.C. § 605(a). To state a claim under § 605(a), a plaintiff must allege that "at least part of the event's transmission was produced by satellite." *J & J Sports Prods., Inc. v. Barretta*, No. 18-CV-5111 (NG)(ST), 2019 WL 7284249, at *3 (E.D.N.Y. Sept. 10, 2019), *R&R adopted*, 2019 WL 7283284 (E.D.N.Y. Dec. 27, 2019) (internal quotation marks and alteration omitted); *see also Joe Hand Promotions, Inc. v. Disla*, No. 19-CV-788 (NG)(SMG), 2020 WL 2572268, at *2 (E.D.N.Y. Feb. 3, 2020), *R&R adopted*, 2020 WL 3451659 (E.D.N.Y. June 24, 2020) ("[A]ll that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite." (internal quotation marks omitted)).

Second, the plaintiff must show that a program exclusively licensed to the plaintiff was "exhibited in a commercial establishment, one which undisputedly did not pay a licensing fee." *Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019).

### B. *Defendant El Pedregal's Liability*

Plaintiff has sufficiently stated a § 605 claim against El Pedregal. First, Plaintiff has alleged that El Pedregal "intercepted and/or received the satellite communication of the Program at El Trono De Mexico Sports Bar." (Compl. ¶ 30; *see* Gagliardi Aff. ¶ 11.) Second, Plaintiff has shown that it was granted "exclusive nationwide commercial distribution (closed-circuit) rights" to sublicense the Program (Compl. ¶ 19; *see* Gagliardi Aff. ¶ 3; Master Services Agreement at 1; SOW 4 at 1), and that El Pedregal, a commercial establishment, broadcast the Program without paying the requisite sublicense fee (*see* Compl. ¶¶ 26-28). Plaintiff's investigator Santangelo visited the Establishment on November 2, 2019 and observed one of the Program's undercard bouts exhibited on five televisions. (*See* Santangelo Aff. at 1). Although she did not observe the Canelo vs. Kovalev main event being shown at the Establishment, the undercard bout is included as part of the Program. (*See* Gagliardi Aff. ¶ 7; SOW 4 at 1.)

8

Accordingly, the undersigned respectfully recommends that El Pedregal be found liable for violating Section 605(a) of the FCA.

C.  *Defendant Ramirez's Liability*

Individuals may be held liable for the FCA violations of their establishments under two theories: vicarious liability and contributory liability. *See J & J Sports Prods., Inc. v. Guncay*, No. 18-CV-2097 (FB)(RML), 2018 WL 6313210, at *2 (E.D.N.Y. Oct. 17, 2018), *R&R adopted*, 2018 WL 6308773 (E.D.N.Y. Dec. 3, 2018). "To establish vicarious liability, a plaintiff must show that the defendant had a 'right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials.'" *Id.* (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)). "To establish contributory infringement, a plaintiff must show that the defendant 'authorized the infringing use.'" *Id.* (quoting *Softel, Inc.*, 118 F.3d at 971). Plaintiff does not specify the theory under which it seeks to hold Ramirez liable. Because the undersigned finds that Ramirez is vicariously liable, it is not necessary to consider whether he is contributorily liable. *See id.* at *3.

Plaintiff alleged that, by virtue of his positions as owner and principal of El Pedregal, and as the sole individual on its liquor license, Ramirez had the right, ability, and obligation to supervise the activities that took place at El Pedregal, including the broadcast of the Program. (*See* Compl. ¶¶ 9-13.)

Plaintiff also presented evidence tending to show that Ramirez financially gained from El Pedregal's exhibition of the Program. Direct financial gain can typically be shown under similar circumstances when the establishment collects a cover charge or admission fee on the night of the event, and there may also be "strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast." *J & J Sports Prods.,*

9

*Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG)(PK), 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016) (finding plaintiff failed to present evidence of financial gain).

Here, the investigator who visited the Establishment on the night of the Program paid a $10 cover charge, ordered a drink, and counted between 36 and 42 patrons. (*See* Santangelo Aff. at 1-2.) *Cf. Guncay*, 2018 WL 6313210, at *3 (imposing vicarious liability where plaintiff presented evidence showing establishment collected $20 cover charge and hosted 80 patrons); *J & J Sports Prods., Inc. v. McAdam*, No. 14-CV-5461 (PKC)(CLP), 2015 WL 8483362, at *2-3 (E.D.N.Y. Dec. 9, 2015) ($20 cover charge, 100 patrons); *J & J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, No. 13-CV-4299 (FB)(VMS), 2014 WL 4467774, at *2, *6 (E.D.N.Y. Sept. 9, 2014) ($8 cover charge, 40 patrons).

In addition, El Pedregal advertised its broadcast of the Program on posters outside the Establishment. (*See* Loughlin Decl. ¶ 16; Dkt. 13-3 at ECF Pages 31-33.) Such advertising bolsters the inference that broadcasting would increase patronage and, thus, revenue. *See J &J Sports Prods., Inc. v. Dowling*, No. 19-CV-2002 (LDH)(ST), 2020 WL 7249287, at *3-4 (E.D.N.Y. Mar. 6, 2020), *R&R adopted in relevant part*, 2020 WL 6937861 (E.D.N.Y. Nov. 25, 2020) (individual defendant's "status as the principal on a liquor license," supplemented by "facts proving financial gain, such as advertising," sufficed to establish vicarious liability); *see also J & J Sports Prods., Inc. v. Cineus*, No. 18-CV-5109 (AMD)(PK), 2021 WL 829397, at *5-6 (E.D.N.Y. Feb. 2, 2021), *R&R adopted*, 2021 WL 826013 (E.D.N.Y. Mar. 4, 2021) (same).

Accordingly, the undersigned respectfully recommends that Ramirez be held vicariously liable for violating Section 605(a) of the FCA.

**V.   Damages**

Under the FCA, a plaintiff may elect to receive damages reflecting the actual amount of money lost plus the defendant's profits, or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Plaintiffs may also

10

seek enhanced damages for conduct that is willful or done for commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii).

Here, Plaintiff has elected to receive statutory, rather than actual, damages, in the amount of $4,200; it also seeks $12,600 in enhanced damages. (Pl. Mem. at 8.)

### A.    *Statutory Damages*

A court has discretion to award damages within the statutory range of $1,000 to $10,000 for each violation of the FCA. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Although § 605 does not define "violation," courts have generally "interpreted the showing of an event on a single night as one violation." *Joe Hand Promotions, Inc. v. Kings Point Rest., Inc.*, No. 17-CV-1870 (MKB)(CLP), 2017 WL 6611705, at *4 (E.D.N.Y. Nov. 3, 2017), *R&R adopted*, 2017 WL 6611571 (E.D.N.Y. Dec. 27, 2017). Here, there was a single violation of the FCA.

"Courts in this Circuit generally award [statutory] damages based on the greater of two calculations: either the flat-flee method or the per-person method." *Barretta*, 2019 WL 7284249, at *5. "Under the 'flat-fee' method, damages are equal to the amount that the defendants would have paid for authorization to broadcast the event lawfully." *Joe Hand Promotions, Inc. v. Dilone*, No. 19-CV-871 (NGG)(RML), 2020 WL 2572271, at *4 (E.D.N.Y. Jan. 23, 2020), *R&R adopted in relevant part*, 2020 WL 1242757 (E.D.N.Y. Mar. 16, 2020). "Under the 'per-person' method, damages are equal to the amount the patrons would collectively have paid to view the event in their homes." *Id.* Where a plaintiff "has failed to provide any evidence of the per-person residential fee," "the flat-fee method is appropriate." *Id.*

Plaintiff has not provided any information about the price each individual customer would have paid to view the program at home. Accordingly, the undersigned will use the flat-fee method to calculate damages. The sublicense fee that Plaintiff would have charged a commercial establishment to broadcast the Program is based on the capacity of the sublicensing establishment. (Gagliardi Aff.

11

¶ 8.) The investigator who visited the Establishment estimated its capacity to be "approximately 70 people." (Santangelo Aff. at 2.)

The "Rate Card" attached to SOW 4 shows that the license fee to broadcast the Program for an establishment with a capacity from 1 to 100 was $1,400. (Rate Card, Dkt. 13-3 at ECF Page 21.) Plaintiff also states that "the commercial fee for an establishment the size of El Trono De Mexico Sports Bar" was $1,400. (Compl. ¶ 28; *see* Gagliardi Aff. ¶ 8.) Therefore, although SOW 4 states that the Program's applicable license fee was $1,600 (*see* Ex. A to Compl. at 1-2), the undersigned uses $1,400 as the applicable license fee.

Plaintiff acknowledges that courts in this Circuit generally award statutory damages equal to the licensing fee, stating, "If the Court were to adhere to the approaches previously used within the Second Circuit, the statutory damages award would be the equivalent of the licensing fee ($1,400.00)." (Pl. Mem. at 8.) However, it argues that increasing its statutory damages to an amount triple the sublicense fee is necessary to deter wrongful conduct. (*See* Pl. Mem. at 8-9.)

The undersigned sees no reason to depart from the well-recognized approach taken by courts in this Circuit and finds that it is not necessary to triple the licensing fee amount when imposing a statutory damage award in order to deter future misconduct. When the defendant has engaged in willful misconduct, the same deterrent effect can be achieved by <u>enhancing</u> the statutory damages, as provided for by the statute. *See J & J Sports Prods. Inc. v. Tequilitas 2, Inc.*, No. 18-CV-2131 (BMC), 2019 WL 919551, at *2 (E.D.N.Y. Feb. 25, 2019) ("Imposing enhanced damages is obviously just as sufficient a deterrent measure as using a multiplier of estimated actual damages."); *see also J & J Sports Prods., Inc. v. Shaw*, No. 19-CV-2383 (AMD)(ST), 2020 WL 1034361, at *5 (E.D.N.Y. Feb. 12, 2020), *R&R adopted*, 2020 WL 1031804 (E.D.N.Y. Mar. 3, 2020) (declining plaintiff's request to "deviate from the well-established practice in this District" by imposing treble damages, and recommending

12

calculating damages using statutory "flat fee" approach equal to the amount charged for the sublicense).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$1,400** in statutory damages.

### B.   Enhanced Damages

A court may enhance its award of damages by an amount up to $100,000 per violation if the plaintiff establishes that the violation was both "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(I)(3)(C)(ii); *see J & J Sports Prods., Inc. v. Afrikan Poetry Theatre Inc.*, No. 17-CV-2196 (ARR), 2018 WL 2078482, at *7 (E.D.N.Y. Feb. 27, 2018), *R&R adopted*, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018). Willfulness can be established merely by the fact that a televised event was broadcast without authorization. *See J & J Sports Prods., Inc. v. James*, No. 17-CV-5359 (NGG)(ST), 2018 WL 3850731, at *7 (E.D.N.Y. July 25, 2018), *R&R adopted*, 2018 WL 3848921 (E.D.N.Y. Aug. 13, 2018) (collecting cases); *see also Dilone*, 2020 WL 2572271, at *5; *Barretta*, 2019 WL 7284249, at *6. Plaintiff also notes that its "programming is not and cannot be mistakenly, innocently or accidentally intercepted … because [the] programming is encrypted" and requires commercial activation. (Gagliardi Aff. ¶ 9.)

Plaintiff has established that El Pedregal exhibited the Program to its patrons without paying the sublicense fee. (*See* Compl. ¶ 28; Gagliardi Aff. ¶ 7; Santangelo Aff. at 1-2.) Thus, its conduct was willful.

Courts consider several factors to determine whether enhanced damages are warranted. These factors include whether the defendant has repeatedly violated the FCA, the extent of the plaintiff's actual damages, the extent of the defendant's unlawful monetary gains, whether the defendant advertised the wrongful broadcast of the event, and whether the defendant collected a cover charge

13

or money for food and drinks from those individuals who viewed the event. *See James*, 2018 WL 3850731, at \*8.

Plaintiff does not allege that El Pedregal has repeatedly violated the FCA or the extent of Plaintiff's actual damages (beyond the licensing fee). However, Plaintiff has shown that El Pedregal advertised the event, that it collected a $10 cover charge from as many as 42 patrons—resulting in unlawful monetary gains of up to $420—and that it earned some money from drinks ordered by patrons during the unauthorized exhibition of the Program. (*See* Santangelo Aff. at 1-2.) Based on these factors, the undersigned finds that enhanced damages are warranted against El Pedregal.

However, Plaintiff has not demonstrated that enhanced damages should be awarded against Ramirez. Plaintiff pleads that "Ramirez specifically directed the employees of El Trono De Mexico Sports Bar to unlawfully intercept, receive and broadcast Plaintiff's Program … or intentionally intercepted, and/or published the Program … himself" (Compl. ¶ 14), and that he "had an obvious and direct financial interest in the activities of El Trono De Mexico Sports Bar" (*id.* ¶ 15). Although Plaintiff alleges that Ramirez is the owner and principal of the Establishment, there is no evidence that he, in particular, acted willfully here. Plaintiff has not established that Ramirez "was personally involved in approving the decoding of the signal or otherwise knew that the fight was being unlawfully intercepted." *J & J Sports Prods., Inc. v. Sugar Café Inc.*, No. 17-CV-5350 (RA), 2018 WL 324266, at \*3 (S.D.N.Y. Jan. 5, 2018). There is no evidence of his presence at any point that night or of how long the posters advertising the fight were displayed, such that he would have seen them. The investigator who visited the Establishment stated that she saw a "female" working there, not Ramirez. (Santangelo Aff. at 1.) *See Sugar Café Inc.*, 2018 WL 324266, at \*3 (finding insufficient evidentiary basis to award enhanced damages against individual defendant who was an "officer, director, shareholder and/or principal," because, *inter alia*, "[t]he investigator's affidavit identifies only an 'Unknown Hispanic Female' as a waitress working at [defendant] cafe [the] night" of the unlawful broadcast).

14

Accordingly, the undersigned respectfully recommends that enhanced damages be awarded against El Pedregal only.

While treble damages have sometimes been awarded for willful violations, *J & J Sports Productions, Inc. v. Meson de Colombia, Inc.*, No. 10-CV-1142 (ENV)(ALC), 2010 WL 4791771, *3 (E.D.N.Y. Oct. 7, 2010), *R&R adopted*, 2010 WL 4789964 (E.D.N.Y. Nov. 18, 2020), courts in this Circuit have "typically awarded enhanced damages equal to double the statutory damages in similar cases," *James*, 2018 WL 3850731, at *7 (collecting cases). Where, as here, three of the five factors have been proven, the undersigned finds that enhanced damages in an amount that is twice the statutory damages "will best provide an adequate recovery for Plaintiff and serve as a deterrent to future violations, without unduly penalizing Defendants." *McAdam*, 2015 WL 8483362, at *5. Such an amount would effectively result in a total award against El Pedregal of triple the licensing fee.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$2,800** in enhanced damages.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion for default judgment be GRANTED. Specifically, the undersigned respectfully recommends that Plaintiff be awarded **$1,400** in statutory damages, for which both Defendant Jesus Ramirez and Defendant El Pedregal Restaurant Corp. are jointly and severally liable, and **$2,800** in enhanced damages, for which only El Pedregal is liable.

Additionally, the undersigned respectfully recommends that Plaintiff's request that Plaintiff's counsel be allowed to move for pre- and post-judgement interest, attorneys' fees, and costs within 30 days after entry of default judgment against Defendants be GRANTED.

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and file proof of service on the docket by **August 5, 2022**.

Any objection to this Report and Recommendation must be filed within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any objection waives the right to further judicial review of this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: August 1, 2022
Brooklyn, New York